## BOTHWELL, ET AL. v. HAMILTON, ADM'R.

1. After a will has been admitted to probate, letters testamentary granted thereon, and proceedings had thereon to a final settlement of the estate, the propriety of the probate of the will, cannot for the first time be raised in this Court.

2. When by a will a life estate is given to the wife in all the property of the deceased, with remainder to the children, and the will is proved, and admitted to record, the Orphans' Court has no power to make distribution of the property during the lifetime of the wife. Such a distribution, made during the life of the widow, and at her instance, or by her consent, is not the act of the Court, but is in effect a gift of her life estate, and no matter how unequal it may be, will not prejudice the interests of those in remainder.

Error to the Orphans' Court of Jefferson.

THIS was a proceeding upon the estate of Audley Hamilton, deceased.

A will being offered for probate by Jane Hamilton, the widow, on the 4th April, 1838, the Court directed a citation to issue to James T. Bothwell and Ellen his wife, to show cause against it. At a subsequent term of the Court, and after several continuances, the Court made the following order, on the 23d October, 1838: " William S. Earnest, one of the subscribing witnesses to said will, being duly sworn and examined touching the execution of the same, and he having to the satisfaction of the Court proved the facts required by law to give validity to a will, it is ordered that said will be recorded, as the last will and testament of Audley Hamilton, dec'd."

The will is as follows:

*The State of Alabama—Jefferson County.*

I, Audley Hamilton, of said county, on this, the third day of January, one thousand eight hundred and thirty-eight, of sound mind, make this my last will and testament. My soul I return to God, who gave it, and my body to the earth, to be buried in a decent, christian manner, as my beloved wife may direct. My children I wish equally, and well taught, the English language, and in order to enable my wife, Jane Hamilton, to raise and educate my children, in the manner above stated, I will and give her, all my personal and real estate, to be so managed by her, as she may see proper, during her life, and at her death to be equally divided between my children. Except, however, a family of negroes given her by her father, consisting of Esther, David, Kitty, Tom, Bob, and Martha, which I wish to be at her disposal. By prudence and economy, I have money enough to pay all debts; the payment of them I leave to my wife; and should there not be enough, she may sell any property I have to raise funds for this purpose. In testimony of which, I subscribe my name, and affix my seal.

HIS

AUDLEY ⋈ HAMILTON, [L. S.]

MARK

In presence of WM. S. EARNEST,
    H. D. PALMER,
    N. G. MARTIN.

Jane Hamilton, the widow, was appointed administratrix with

the will annexed, and commissioners were appointed to appraise the personal property, and also to divide the slaves among the children; also, an order for the sale of the personal property except the slaves.

On the 25th February, 1841, the appraisers returned an inventory of the appraisement of the personal estate, and of the division of the property :

To A. S. Hamilton, they assigned two negroes, valued at $1,500, and other personal property, amounting in all to   $1,973

To J. J. Bothwell, a negro girl, at $400, the hire of a negro for seven years, $420, and personal property, amounting in all to                                                    $1,116 50

- To William C. Hamilton, two negroes, valued at        $1,200

To C. T. Hamilton, two negroes and a horse, valued at    1,510

To Frances S. Hamilton, two negroes, valued at            850

To Elvira Hamilton, one negro, valued at                  300

There is also found in the record, an account of the sale of personal property, signed by Jane Hamilton, to the amount of $811 31, and an inventory of notes to the amount of $298 58. Also, a list of articles said to be retained under the will, amounting in all in value to less than $259.

On the 22d May, 1841, Jane Hamilton resigned her administration of the estate, and on the 18th December, 1841, Andrew S. Hamilton was appointed administrator *de bonis non*, with the will annexed.

On the 3d October, 1843, he stated his account, filed his vouchers and made application to have the same allowed ; and final settlement thereon made. The Court ordered that the settlement be made on the fourth Saturday of November next after, and that publication be made, by notice set up at the court house, and three other public places, notifying all persons to appear, &c.

On the 25th November, 1843, it being the fourth Saturday, the following order was made. This day came Andrew S. Hamilton, adm'r, &c., and made final settlement of said estate, which is ordered to be recorded. Then follows a statement of the settlement, by which it appears there is in his hands for distribution the sum of $446 86, upon which the Court made the following order :

By the final settlement of the estate of Audley Hamilton, de-

ceased, this day made, there remains in the hands of the administrator, the sum of $446 86, and it appearing to the satisfaction of the Court, that the widow of the said Audley has received the full amount to which she is entitled under the will, and that he left the following children him surviving, to wit: Andrew S. Hamilton, Ellen, married to James J. Bothwell, Carter T. Hamilton, Frances S., married to James Wilson, and Elvira S. a minor, who under the will are entitled to equal distribution. And it appearing further to the satisfaction of the Court, that the said legatees have received from said estate as follows, viz: [Here follows a statement of the amount received by each as above.] In order that they may be made as equal as may be, by the distribution, it is ordered, that the said sum of $446 86, be allotted, and distributed to the said Elvira S. Hamilton.

From this decree Bothwell and wife prosecute this writ, and assign for error—

1. In admitting probate of the will, without notice to the next of kin.

2. The order requiring the sale of the personal property.

3. The order directing the division of the slaves.

4. The receiving by the Court of the unequal and unjust distribution made.

5. The Court did not audit and state the account of the administrator *de bonis non.*

6. Forty days notice was not given as the law requires.

7. The Court erred in the final decree, and in not appointing a guardian *ad litem* for the minor.

Mudd, for plaintiff in error, cited 4 Ala. Rep. 238; 7 Porter, 272; 1 Ala. Rep. 594; 5 Id. 473.

ORMOND, J.—The assignments of error present many questions which cannot be considered. No question can be here raised, upon the sufficiency of the probate of the will. After a will has been admitted to probate, and has been acted on by the Court without objection, the propriety of its probate cannot be incidentally, and for the first time raised in this Court. The Orphans Court may certainly, and of its own mere motion, repeal, or revoke letters testamentary, and set aside the probate of a will unadvisedly granted; or, it may upon application confirm, or set aside

Bothwell, et al. v. Hamilton, Adm'r.

a probate previously granted, and upon its action, or refusal to act, a writ of errer may be prosecuted. But when, as in this case, the probate has never been objected to in the Orphans' Court, and has been the foundation of all the subsequent proceedings, it cannot be thus incidentally questioned. [Shields et al v. Alston, 4 Ala. Rep. 248; Hill v. Hill, 6 Ala. Rep. 166; Boyett v. Kerr, 7 Ala. Rep. 9.]

By the provisions of the will thus admitted to probate, and by the widow taking out letters of administration and thus assenting to the bequests, she became invested with the life estate in the property conveyed by the will, with a vested remainder to the heirs at law of the testator, who take as purchasers. The Orphans' Court had therefore no jurisdiction to make the distribution, which at the instance of the administratrix, it appears was made among the heirs. This distribution is not the act of the Court, but is the act of the administratrix, and if done at her instance, as appears to be the fact from the record, is a gift of her interest, to those amongst whom the property was distributed. The inequality of the distribution is a matter which cannot be questioned, as it does not prejudice the rights of the legatees, who take no present interest under the will, but at the death of their mother will be entitled to their equal share of the estate; a right which no act of her's can impair or abridge.

The Court was equally without jurisdiction to make the distribution, which it appears was made at the instance of the administrator *de bonis non*, as by the will all the property of the testator, real and personal, was vested in the widow during her life, with remainder to his heirs.

These considerations are decisive of the case. No matter how erroneous the action of the Court may have been, as it had no jurisdiction, its acts cannot prejudice any one, being merely void. Let the writ of error be dismissed, there being no judgment of which the plaintiff in error can complain. As it respects the defendant in error, he may, if he thinks proper, prosecute a writ of error to reverse the judgment which the Court rendered against him.