# GRAY'S ADM'RS *vs.* CRUISE.

[DETINUE FOR SLAVES.]

1. *Jurisdiction of probate court to grant administration.*—The jurisdiction of the probate court, in the matter of the grant of letters testamentary, and of administration, is original, general, and unlimited ; and hence every reasonable presumption will be indulged in favor of its orders, when collaterally assailed.

2. *Validity of grant of administration de bonis non.*—A grant of letters of administration *de bonis non*, when there is in fact no vacancy in the administration, will be held void, even in a collateral proceeding; but it will not be held void, in a collateral proceeding, merely because it fails to show the appointment and removal, resignation, or death, of the administrator in chief; and where the records shows the regular appointment of the administrator in chief, and that on a subsequent day it was ordered that his "resignation be received and recorded," and that letters of administration *de bonis non* were on the same day granted to another, it will be presumed that the resignation was of the office of administrator, and was in writing as required by the statue.

3. *Same.*—Where a transcript from the records of the probate court, purporting to be "a full, true and complete exemplification of the records and files of said court touching the administration" of a decedent's estate, shows a grant of administration *de bonis non*, on condition that the party execute and file a bond, but does not show that the bond was executed and filed as required by the order, it will be presumed in favor of the validity of a subsequent grant of administration, when collaterally assailed, that the party failed to comply with the condition.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. NAT. COOK.

THIS action was brought by David N. McClanahan, as the administrator *de bonis non* of John Gray, deceased, against William Cruise; and was commenced on the 10th August, 1857. The defendant pleaded, in short by consent, the general issue, and *ne unques administrator ;* and issue was joined on these pleas. On the trial, as the bill of exceptions shows, after the plaintiff had proved his intestate's ownership and possession at the time of his

death of the slaves in controversy, the defendant's possession at the commencement of the suit, the value of the slaves, and of their annual hire, he offered in evidence a transcript from the records of the probate court of Shelby county, which was certified by the probate judge to be "a full, true and complete transcript and exemplification of the records and files of said court touching the administration of the estate of John Gray, deceased," and which showed the following proceedings:

(December 15, 1845.) "It is ordered, that Mrs. Jane Caroline Gray be appointed administratrix, &c., of John Gray, deceased, on her entering into bond, with security, in the sum of $2,000. It is ordered, that the bond given pursuant to the above order, with A. E. Nunnally and William Gray sureties, be approved and recorded." (June 12, 1847.) "It is ordered, that the resignation of Jane C. Brewer (late Gray) be received and recorded. It is ordered by the court, that William Brewer be appointed administrator of the estate of John Gray, deceased, on his executing and filing in this office his bond, to approval, in the sum of at least $2,000." On the 5th August, 1847, leave was granted to said William Brewer, as administrator, to sell the negroes belonging to the intestate's estate. In September, 1847, Brewer filed his accounts and vouchers for final settlement, and the court appointed the 30th October as the day for the settlement. On the 16th October, 1847, Brewer's report of the sale of the negroes was received, and ordered to be filed and recorded. On the 30th October, 1847, a final settlement of Brewer's administration was made by the court, when it was ascertained that there was a balance of $1128 due from him to the estate; and it was ordered, that he be allowed to retain one-half of this sum, in right of his wife, and pay over the other half to the guardian of the other distributee; and that, on the payment of this sum, "said administrator be discharged." (July 21, 1857.) "This day came David Gray, guardian of John A. Gray, one of the distributees of the estate of John Gray, deceased, and made application to the court for the appointment of an administrator *de bonis non* of said estate; and

Gray's Adm'rs v. Cruise.

it appearing to the satisfaction of the court that said estate has not been fully administered, and that David N. McClanahan is a suitable person to act as such administrator, and he consenting thereto,—it is therefore ordered by the court, that the said David N. McClanahan be, and he is hereby, appointed administrator *de bonis non* of the estate of said John Gray, deceased, and that he enter into bond, with securities, according to law, in the sum of $5,000; and thereupon let letters of administration *de bonis non* issue to him accordingly." (August 1st, 1857.) "It is ordered by the court, that the bond given by David N. McClanahan, administrator *de b nis non* of the estate of John Gray, deceased, with W. H. Pope and S. A. McClanahan securities, be approved, filed, and recorded; and that letters of administration on the estate of said John Gray be issued."

"The defendant offered evidence to show, that he held said slaves as bailee under hire from William Brewer, who intemarried with Jane C., the widow of said John Gray; and that said Jane C. was still living. This being all the evidence, the court charged the jury, that if they believed the evidence, the plaintiff was not entitled to recover; to which charge the plaintiff excepted," and which he now assigns as error.

S. LEIPER, L. E. PARSONS, and ALEX. & JOHN WHITE, for appellant.

GEO. S. WALDEN, and JAS. B. MARTIN, *contra.*

R. W. WALKER, J.—The plaintiff sued as administrator *de bonis non* of John Gray; and the general charge of the court, that if the jury believed the evidence, the plaintiff was not entitled to recover, is sought to be sustained upon the ground, that the order of the probate court, by which he was appointed such administrator, was null and void.

The jurisdiction of the probate court, in the matter of the grant of letters testamentary, and of administration, is original, general, and unlimited. It is, to that extent,

a court of general, not of limited, or special jurisdiction; and hence its order, granting letters of administration *de bonis non*, cannot be held void, in a collateral proceeding, because it fails to show the appointment and removal, resignation, or death, of the administrator in chief.—Ikelheimer v. Chapman, 32 Ala. 676.

But this court has, more than once, recognized the principle, that such an order is not *conclusive* evidence of the jurisdiction of the court in the particular case; and that if, in point of fact, there was no vacancy in the administration when the order was made, the appointment will be held void, even in a collateral proceeding.—Mathews v. Douthitt, 27 Ala. 273; Rambo v. Wyatt, 32 Ala. 363; also, Lessee of Griffith v. Wright, 18 Geo. 173; Miller v. Jones, 26 Ala. 259.

In the present case, it is insisted, that the presumption of jurisdiction, which would arise from the isolated order for the appointment of the plaintiff as administrator *de bonis non*, is overturned by other parts of the record from the probate court, which, it is alleged, show that there was no vacancy in the administration when the plaintiff was appointed. The point made in support of this proposition is, that it appears from this record that Mrs. Gray had been duly appointed administrator of her deceased husband, and that it is not shown that her administration had ever terminated.

As superior courts act by right, and not by wrong, their acts and judgments are conclusive in themselves, unless plainly beyond the jurisdiction of the tribunals whence they emanate; or, as it is elsewhere expressed, "nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so." In regard to such courts, every presumption is made, in favor not only of their proceedings, but of their jurisdiction. Grignon v. Astor, 2 How. (U. S.) 341; Morgan v. Burnett, 18 Ohio, 535; Adams v. Jeffries, 12 Ohio, 253, 271; Wright v. Watson, 11 Humph. 529, 531; Wells v. Mason, 4 Scammon, 84, 88; Cox v. Thomas, 9 Gratt. 323; Morrow v. Weed, 4 Iowa, 77; Kelsey v. Wiley, 10 Geo. 371, 382; Woods v. Crawford, 18 Geo. 526; Shumway v. Stillman,

4 Cowen, 294, 296; 4 Phil. Ev. 109; 1 Smith's L. C. 816, 820, 822. · Hence, where the record of a superior court is resorted to for the purpose of showing that a particular judgment or order (which is brought into question collaterally) was beyond the jurisdiction of the court, every reasonable intendment will be made in order to support the jurisdiction. In such cases, the rule is, not that the order is void, unless the record plainly shows that the court had jurisdiction; but, on the contrary, the order must be deemed valid, unless it plainly appears that the court had not jurisdiction; and the leaning of the tribunal in which the order is collaterally assailed, will be to such a construction of the record as will uphold the validity of the proceeding. The fact that the court appointed an administrator *de bonis non*, is, of itself, *prima-facie* evidence that there was a vacancy in the administration, and will be held conclusive, until it is clearly and explicitly disproved.—Authorities *supra;* also, opinion of Stone, J., in Hunt v. Ellison, 32 Ala. 195, 208, and cases cited; Miller v. Jones, 26 Ala. 259; Foot v. Stevens, 17 Wend. 483; Chemung Bank v. Judson, 4 Selden, 254, 260; Hart v. Seixas, 21 Wend. 40.

The probate judges, as is well known, are not always selected for their legal learning; and the records of these courts are often made up without the aid of counsel, and in haste. The rule, that liberal intendments will be indulged in support of the proceedings of courts of general jurisdiction, is, therefore, applicable with peculiar force to probate courts, so far as they are courts of general jurisdiction.—See Miller v. Jones, 26 Ala. 259; Wyatt v. Rambo, 29 Ala. 527–8; Lyon v. Odom, 31 Ala. 238, 240.

Giving to the record from the probate court of Shelby county the benefit of a liberal application of the maxim, *omnia presumuntur rite esse acta*, we do not think that the appointment of the plaintiff as administrator *de bonis non* is shown so clearly to have been beyond the jurisdiction of the court, as that it may be pronounced void in a collateral proceeding. It appears from the record, that Mrs. Gray was duly appointed administratrix of her deceased husband, on 15th December, 1845. The parol evidence

shows that, between that date and 12th June, 1847, she intermarried with one William Brewer. The record shows that, on 12th June, 1847, an entry was made upon the minutes, which consists of two orders, one following the other in immediate succession, as follows : "It is ordered, that the resignation of Jane C. Brewer (late Gray) be received and recorded. It is ordered by the court, that William Brewer be appointed administrator of the estate of John Gray, deceased, on his executing and filing in this office his bond, to approval, in the sum of at least two thousand dollars."

It is true, the record does not state, in so many words, that Mrs. Gray resigned her administration upon the estate of John Gray; nor that her resignation was in writing, as required by law. But the entry does show that she resigned something, and there is no evidence that she held any other office which she could resign to the probate court, except that of administratrix of her deceased husband. As soon as this resignation (whatever it may have been) was received by the court, an order was made, and recorded in the same entry, for the appointment of John Gray; a proceeding which was altogether nugatory, if she had not resigned her administration. Moreover, Mrs. Gray is never, after this, spoken of, or referred to in the record, as administratrix of her deceased husband; but in all the orders and decrees made in relation to the estate, after this date, the court proceeds as if her administration had terminated. No violence is done to the language of the order, by construing it to refer to a written resignation; and, with the view of upholding the validity of the subsequent proceedings, it is our duty to place that construction upon it. Considering this order, in connec tion with the order for the appointment of Brewer as administrator, which forms part of the same entry, and with the other parts of the record, the most that can be said is, that it is doubtful whether or not the administratrix had in fact resigned. This, as we have seen, falls short of the showing necessary to be made, before the appointment of the administrator *de bonis non* can be treated as void, in a collateral proceeding. The question would be a very

different one upon a direct appeal from the order granting administration *de bonis non.*—Authorities *supra;* also, Bothwell v. Hamilton, 8 Ala. 461.

The counsel on both sides concede, that Brewer never was legally appointed administrator. The order made was, that he be appointed administrator, "on his executing and filing in this office his bond, to approval, in the sum of $2000." The fact that Brewer was subsequently recognized by the court as administrator might, possibly, in the absence of opposing evidence, justify the presumption that he had complied with the order, and given the required bond. But the transcript from the probate court was a complete transcript of the records and "of the files" touching the administration of Gray's estate; and the bond required of Brewer is not to be found in it. There is, therefore, affirmative evidence that no such bond was in fact executed by him; and, in order to sustain the validity of the subsequent grant of administration *de bonis non* to the plaintiff, when collaterally assailed, this appointment of Brewer, under a conditional order which was never complied with, will be disregarded.—See Hoskins v. Miller, 2 Dev. 362.

Judgment reversed, and cause remanded.