# Keith v. Proctor.

*Application for Letters   Testamentary   by   Foreign   Executor.*

1. *Grant of letters testamentary to foreign executor; condition and terms thereof.*—The statute (Code of 1886, § 2037) removes non-residence as a disqualification for the office of executor in this State, and permits the issuance of letters testamentary to foreign executors of wills regularly probated, but only "upon like bond and security and the same terms and conditions" as are required of residents.

2. *Same; when not relieved from giving bond.*—A foreign executor, applying for ancillary letters testamentary in this State, is not relieved from giving bond by a clause in the will of the testator requesting the court of his domicil not to require bond, nor does the fact that the domiciliary court where the will had been probated did nevertheless require him to give bond, which was done, excuse such executor from giving another bond in this State as a condition precedent to the granting to him here ancillary letters testamentary.

3. *Renunciation of right to letters testamentary.*—Under the statute, (Code of 1886, §§ 2010–11), the failure of a person named as executor in a will to apply for letters within 30 days from the probate thereof is a renunciation of the right; but when a foreign executor applies for letters, the time must be computed from the ancillary probate in this State, and not from the original probate in the State of the testator's domicil.

4. *Same; by implication.*—An executorship being a trust which may be accepted or not, there may be a renunciation of it expressly or by implication.

5. *Same; case at bar.*—Where a foreign executor, who, though renting and collecting rents from his testator's real property within this State, fails for more than a year after the probate of the will in the domiciliary court to have ancillary probate of the will and to apply for ancillary letters testamentary in this State, and does not make such application until after an administrator has been appointed within the State, having no other excuse for such failure than that he was advised that such probate was unnecessary, such conduct amounts to a renunciation of the right to have ancillary letters testamentary issued to him in this State, which renunciation he is without capacity to retract.

APPEAL from the Probate Court of Jackson.

Heard before the Hon. WILLIAM B. BRIDGES.

On January 4, 1894, J. F. Anderson died testate at

[Keith v. Proctor.]

his home in Franklin county, Tennessee, and on January 15, 1894, his will was duly probated in the county court of said Franklin county, Tennessee, and in said month, the appellant, Louie Keith, who had been named as one of the executors in the will, was duly appointed and qualified as executrix.

On the 8th day of April, 1895, Louie Keith filed in the probate court of Jackson county, Alabama, a certified copy of the will of John F. Anderson, deceased, together with a certificate of the judge of the county court of Franklin county, Tennessee, that such will was regularly proved and established in said court, and that letters testamentary were issued to said Louie Keith thereon, in accordance with the laws of the State of Tennessee ; and also a certified copy of the bond given by said Louie Keith, as such executrix, and on file in said county court of the county of Franklin, State of Tennessee. On the same date, Louie Keith filed her application in writing, setting forth the facts as above mentioned, and further showing that on the 13th day of March, 1895, letters of administration on the estate of said John F. Anderson, deceased, were, on the application of one H. C. Arnold, who claimed to be a creditor of said estate, granted to John F. Proctor, as the general administrator of Jackson county, Ala., by the probate court of Jackson county, Alabama ; and prayed that the letters granted to said Proctor be revoked, and that letters testamentary be granted petitioner on the estate of her testator in Alabama. The rest of the facts of the case are sufficiently stated in the opinion.

Upon the hearing of the cause, there was rendered the following decree : "It is further ordered that the letters of administration so granted to said Proctor be revoked. And the said Henry C. Arnold, as such creditor, having filed his petition in writing, praying for the appointment of J. F. Proctor, or some other suitable person, as administrator with the will annexed upon said estate, and the said Louie Keith having filed her petition in writing, praying that letters testamentary upon said estate be granted to her, and by agreement of counsel, both of said petitions having been heard together as one cause, and the court having heard the evidence and the argument of counsel, and after due considera-

tion, the court being of opinion from the evidence that said J. F. Proctor is frugal and provident, and a proper person to have the care and management of said estate, and that the interest of said estate will be best subserved by the appointment of said Proctor the administrator thereof with the will annexed, it is ordered, adjudged, and decreed that the application of the said Louie Keith to be appointed the executrix of said will be denied; and that said J. F. Proctor, as the general administrator of the said county of Jackson, Alabama, be and he is hereby appointed administrator with the will annexed of the estate of the said John F. Anderson, deceased."

From this decree the petitioner, Louie Keith, appeals, and assigns the rendition thereof as error.

R. C. HUNT and MARTIN & BOULDIN, for appellant. 1. At common law the right to devise and bequeath property by will, and the right to appoint an executor to execute such will are rights of property, and are laid down as among the most cherished property rights. The power to dispose of property after death, and as incidental thereto, the right to choose an executor in whom the testator reposes confidence to execute it according his purpose, are among the chief inducements that lead men to strive to accumulate property for their posterity. In keeping with that doctrine, it was the settled law that when a will was proven and admitted to probate, no letters testamentary were required. The probate of the will itself, *ipso facto*, gave the right to proceed and execute the trust. In other words, the courts left the selection of the executor wholly with the testator. *Wood v. Cosby*, 76 Ala. 557; 1 Williams on Executors, 275, 293; *Childress v. Bennett*, 10 Ala. 751.; *Fretwell v. McLemore*, 52 Ala. 134; *Wright v. Phillips*, 56 Ala. 69. 2. It is not the intention of our law, as shown by the statutes, to modify or in any way curtail the valuable right of property in the right to appoint an executor. Code of 1886, §§ 2003, 2004, 2037, 2038, 2066.

TALLY & PROCTOR, *contra.*—1. Appellant's right to letters testamentary is barred under section 2011 of the Code of 1886.—*Wheat v. Fuller*, 82 Ala. 572; *Sewell v. Sewell*, 41 Ala. 359. 2. Under the pleadings and evidence in the cause,

[Keith v. Proctor.]

the court very properly refused to grant letters to her, because from her improvidence, she was incompetent to discharge the duties of the trust, and was not a fit person to serve as executrix.—Code of 1886, § 2004.

3. No one else entitled to letters under section 2011 of the Code having applied, administration, with the will annexed, must be granted under section 2014, subdiv. 4. In such case, the selection of a representative rests largely in the discretion of the judge. The language of the statute is : "Such other person as the judge of probate may appoint.—*Davis v. Swearingen*, 56 Ala. 31 ; *Watson v. Glover*, 77 Ala. 325 ; *Lucich. v. Medin*, 93 Amer. Dec. 376.

4. The statute did not prohibit the appointment of the general administrator. — Code of 1886, § 2030. Chapters 3 and 4 of Part 2, title 4 of the Code, embracing sections 2003 to 2043 inclusive are devoted to the subject of granting letters. These statutes relate to the same subject and must be construed together ; they may be construed so as to make one consistent whole. They are *in pari materia* and must be so construed.—*Fretwell v. McLemore*, 52 Ala. 138 ; *Crawford v. Tyson*, 46 Ala. 299 ; *M. & O. R. R. Co. v. Malone*, 46 Ala. 391 ; 3 Brick. Dig. 749, §§ 28, 39, 40 ; 23 Amer. & Eng. Encyc. of Law, 311, 314.

BRICKELL, C. J.—This was an application by the appellant to the the court of probate of the county of Jackson, for the ancillary probate of the last will and testament of John F. Anderson, deceased, and for the grant to her of ancillary letters testamentary thereon, and for the revocation of letters of administration, as in cases of intestacy, the court had granted to the appellee, as general administrator of the county. At the time of his death, the testator was a resident citizen of the county of Franklin, State of Tennessee, and on the 15th day of January, 1894, his last will and testament was admitted to probate by the county court of said county ; and of the executors nominated by the will, the appellant alone applied for and obtained letters testamentary. The present application was filed April 8, 1895 ; and in and by it the appellant made no offer to give bond and security for the performance of the duties of executrix, nor was such offer made on the hearing ; nor was there

any explanation of the delay in making the application for the probate of the will, and the grant of letters testamentary. On the 13th of March, 1895, the letters of administration to the appellee were granted on the application of one H. C. Arnold, a resident creditor of the testator.

The Code, section 2037, authorizes judges of probate to issue letters testamentary to executors of will regularly probated, who are non-residents of the State, "upon like bond and security, and upon the same terms, conditions and requirements, as are required of the citizens of this State." The succeeding section reads: "When the will has been probated in another State or Territory, before issuing letters testamentary thereon to a non-resident executor, the judge of probate must require him to file in court a copy of the will under which he is appointed, together with a certificate of the judge of the court in which the will was probated, that such will was regularly proved and established, and that letters testamentary were issued to him thereon, in accordance with the laws of the State or Territory in which such original letters were granted, and also a certified copy of the bond or other security, if any, on file in the court from which such letters were issued." These sections originally formed part of an act, approved February 17, 1876, embodied in the Code of 1876, sections 2379-84. Prior to that enactment, non-residents of the State, whether executors of wills of original or of ancillary probate, were incapable of serving as executors. The words of the pre-existing statute were: "No person must be deemed a fit person to serve as executor who is not an inhabitant of this State;" and removal from the State was cause for revocation of letters testamentary. (Revised Code of 1867, §§ 1796, 2017). Reading and construing the sections, as they must be read and construed, with reference to the statutes which they superseded and repealed, it is apparent, the primary, controlling legislative intent, was the removal of inhabitantcy or residence within the State, as an essential qualification of an executor; conferring upon the non-resident the right to letters testamentary which had been limited to the resident executor. Words more significant and expressive of this primary, controlling, legislative intent, could not have been employed, than are

employed in section 2037. There is, in general terms, a grant of authority to judges of probate to issue letters testamentary to non-resident executors of wills regularly probated; but the issue is not to be made absolutely, unconditionally; it is to be made "upon like bond and security, and upon the same terms, conditions and requirements, as are required by law of citizens of this State." The right of the non-resident does not vary from, but is coextensive and coequal with, the right of the citizen. Whatever are the requirements or conditions, upon which the right of the citizen may depend, affect the right of the non-resident, and he is bound to their observance.

An executor not relieved or exempted by a provision in the will of the testator, is required to "give bond, with at least two sufficient sureties, payable to, and to be approved by the judge of probate of the county having jurisdiction of the estate, in a penalty equal to at least double the estimated value of the real and personal property of the estate, and conditioned to perform all the duties which are, or may be by law required of him as such executor or administrator."—Code of 1886, § 2024. It is further declared, that "the judge of probate is liable for any neglect or omission in not taking bond, or for taking an insufficient bond, from any executor or administrator; and any person injured thereby, may maintain an action against such judge and his sureties, and recover according to the injury proved."—Code of 1886, § 2033. These sections, and the sections of later enactment, are *in pari materia*, and must be taken in connection.— Sutherland, Stat. Con., § 288. Letters testamentary, or letters of administration, granted without the taking of bond as the statute requires, are not esteemed *void*; they are irregular, *voidable*, and because of the irregularity subject to revocation on the application of any party interested.—*Ex parte Maxwell*, 37 Ala. 362; *Cunningham v. Thomas*, 59 Ala. 158; *Leatherwood v. Sullivan*, 81 Ala. 458. While this is true, when the validity of the grant is drawn in question collaterally, a judge of probate is bound to the duty, and a duty he should not, and can not, without peril to himself and the sureties on his official bond, forego, of requiring the bond and security as the condition upon which the letters may issue. The protection of all who may have interests involved, and his official oath demand performance of the duty.

[Keith v. Proctor.]

The application of the appellant for letters testament-ary, manifestly proceeds on the hypothesis, and on that hypothesis the hearing was conducted,. that she was not bound to the execution of a bond with sureties, as is required by the statute. We do not understand distinctly, whether the hypothesis is rested on the clause of. the will by which the testator, because of his full confidence in the good faith and integrity of the executors he nominated, "authorizes and empowers and requests. the county court of Franklin county," to qualify and grant letters testamentary to such of them as accepted the trust, without bond; or whether it is rested upon the theory that the bond, that court had nevertheless required the appellant to execute, a copy of which forms a part of the authenticated record filed in the court of probate, satisfies the statutory requirement. The provision in the will of the testator, by its terms, is limited to the court to which it is addressed—the county court of the county of Franklin, Tennessee, the county of the domicil of the testator; and it was not within his contemplation that any other tribunal should exercise that which he expressed as power and authority. It is unlike the general, unlimited provision in the bill before the court in *Leatherwood v. Sullivan, supra,* that no bond be required of the executors. Taken in its largest sense, it signifies. no more than· the willingness of the testator, that the tribunal with which he was familiar, should not require bond and security from his executors, for an administration to be conducted under its supervision. We may conjecture, that if other tribunals and other administrations had been in the mind of the testator, the provision would have been general; but it is not upon mere conjecture or speculation, that we can depart from the words of the provision, converting it from a limited, into a general, unlimited exemption from giving bond and security for the performance of the duties of executor. Besides, we are inclined to the opinion, that as the county court of Franklin had exacted bond and security from the appellant, the. court of. probate could properly have refused to grant her letters testamentary, without requiring of her like bond and security. The vigilance of the court of probate should not have been less than that of the tribunal of domiciliary administration.

The other theory, that as the appellant had given bond

and security in the county court of Franklin, Tennessee,. no other bond or security could be required of her, seems to rest upon the proposition that such is the construc- of section 2038 of the Code. The argument seems to be, that section 2037 has relation wholly to the non-resident executor of wills of original probate in this State, and it is only to such an executor its general terms can be ap- plied, and from whom like ''bond and security'' may be required, as is required of citizens of the State. The succeeding section 2038, has relation to the non-resident executors of a will of original probate in another State or Territory, of which probate and administration in this State is ancillary, and that no other bond and security can be required than such as may have been given at the forum of the original probate, and of the original grant of letters testamentary. Passing the inquiry whether the two sections are capable of such dissociation, if this be the true construction, the result is, that the non-resi- dent executor of a will of ancillary probate, would be without bond and security for the administration of assets coming here into his possession. The liability of sureties of an executor, or administrator, is limited to the assets rightfully coming, or which ought to have come. to his possession, in the State or country in which he is appointed or qualified.—Schouler on Executors, § 146 ; *Fletcher v. Wier*, 7 Dana 345 ; *Governor v. Williams*, 3 Ired. L. 152. It is a mere truism to say, that the leg- islation of other jurisdictions cannot extend the obliga- tion of the bond, or the liability of the sureties. Stat- utes not prohibiting, the common law, in the grant of ancillary letters testamentary, or of administration, pre- ferred the domiciliary representative, but from him new security, according to the law of the forum of the ancillary grant, was always required.—Story on Conflict of Laws, §§512-13 ; Wharton's Conflict of Laws, §§ 408-10. It was never supposed that the security given at the domicil could be extended to a foreign jurisdiction ; and that the foreign jurisdiction, in contravention of its own laws, would suffer administration without security. We are of opinion, that in no event, ought letters testamentary to have issued to appellant, without the bond and secu- rity which would have been required of a citizen of the State. The statute confers on the non-resident the right which had been limited to the resident executor—it re-

moves non-residence as a disqualification—but it is not capable of a construction which distinguishes between the non-resident executor of a will of original probate in the State, and the non-resident executor of a will of ancillary probate. The two stand upon the same plane of equality of right and of duty, with the resident executor.

The statutes, (Code of 1886, §§ 2010–11), require the executor of a will of original probate in the State, to apply for letters testamentary within thirty days after the probate, and if within that period he fails to make application, his right to letters is waived; it is an abandonment, a renunciation of the right, as effectual in legal contemplation, as a renunciation in writing, filed in the court from which the letters must issue. *Wheat v. Fuller*, 82 Ala. 572. The manifest purpose of these requirements, is to avoid a vacuum of indefinite continuance in the administration of the estate, and to quicken the diligence of the person having the right to qualify as executor, in its exercise. In their original enactment, the statutes, as is apparent from the terms in which they are expressed and the state of the existing legislation, had exclusive reference to the resident executor of wills of original probate in this State, and there could not have been occasion or reason for an extension of them to the non-resident executor of a foreign will, of which there was only an ancillary probate. We do not doubt, that upon such probate, the executor must within thirty days thereafter apply for letters testamentary, or the right to letters will be regarded as waived and lost; to this extent, the statutory requirements must be extended. But we can not assent to the proposition, pressed by appellee, that the time within which the application must be made, is to be computed from the original or domiciliary probate. If that construction of the statutes prevailed, it would operate often to thwart the right of the non-resident executor to letters testamentary, which the particular statutes we are considering, are intended to secure. Nor can we assent to the broad proposition pressed by the counsel for the appellant, that as letters testamentary can not be granted, until there is probate of the will, the time within which application for them must be made, is, in all cases, to be computed from the ancillary probate. That is doubt-

less the general rule, but if applied in all cases, it might result in causing a vacuum of prolonged, indefinite continuance in the administration, it is the policy of the law to avoid. Every case must be considered and determined in the light of its own facts and circumstances. An executorship is a trust, the executor is not compelled to accept; there may be express or implied renunciation of it; renunciation in writing, or by matter *in pais*.—*Thornton v. Winston*, 4 Leigh 152; *Uldrick v. Simpson*, 1 S. C. 289; *Ayres v. Weed*, 16 Conn. 291. In 7 Am. & Eng. Encyc. of Law, p. 200, it is said: "Any act radically inconsistent with the nature of the trust may amount to a constructive renunciation of the trust." And in Schouler on Executors, section 46, it is said by the author: "On the other hand, a constructive refusal has sometimes been inferred by acts and omissions of the person named as executor. Thus, it is held that the executor's neglect for a long time to take out letters and prove the will, when he might have done so, amounts to a refusal. And long delay to take such steps ought thus to be construed, in the interest of all concerned, where there has been no intermeddling with the estate on his part, and he has not suppressed the will."

The appellant was a resident of the State of Tennessee, and whatever may have been the necessities of administration in this State, the court of probate could not compel her to probate of the will, and to the taking or renunciation of letters testamentary. The assets within the jurisdiction of the court, consisted exclusively of real estate, from a part of which, the testator having leased or rented it in his life, rents were accruing; and other parts, if not suffered to lie idle and unproductive, there was a necessity to rent. These lands, by the will of the testator, the executors are empowered to sell publicly or privately, as may be most advantageous; and there is a direction to the executors to terminate by notice, an agreement the testator had made with the Memphis & Charleston Railroad Company for the building of their machine shops on a part of the lands, because, as expressed in the will, it had been many years since the agreement was made, and the company had failed to comply with it. The power of sale, under the statute, would have devolved on the appellant solely, as executrix, if she alone had qualified and taken letters tes-

tamentary.—Code of 1886, § 1864. The title to real estate is regulated, governed and established by the *lex rei sitae*; and when a power of sale of lands is conferred by will of an executor, there must be probate of the will in the State where the lands are situated, and the power must be exercised by an executor deriving authority from, or recognized by the laws of the State.—*Sloan v. Frothingham*, 65 Ala. 593; *Kerr v. Moon*, 9 Wheat. 565; *Cutter v. Davenport*, 1 Pick. 81; *Hutchins v. State Bank*, 12 Metc. 424. Without probate of the will in this State, the appellant received rents accruing from the real estate the testator in his life had left; proceeded to the renting of other parts of the real estate, entered into negotiations for a sale of some parts of it; obtained a decree from the chancery court of Franklin county, Tennessee, for the sale of it, a sale which was arrested and prevented by the interference of the appellee after his appointment as administrator. More than twelve months elapsed after the probate of the will at the domicil of the testator, before administration was committed to the appellee as general administrator, during which period, the appellant, though receiving rents, had suffered parts of the lands to be sold for the payment of taxes; and it was not until after administration had been committed to the appellee, and by his interference, a sale of the lands under the decree of the chancery court of Franklin county had been prevented, that she made the present application for letters testamentary. The necessity for an administration in this State was not unknown to her; a personal representative deriving authority and power from the proper tribunal of this State, alone, could exercise dominion and control over the lands; could rent them; could receive the rents, acquitting the tenants from liability; could give the notice to terminate the agreement with the Memphis &. Charleston Railroad Company; and yet she permitted more than twelve months to elapse, during which she could have obtained letters testamentary upon applying for them. If there be an explanation, or excuse for the delay, offered, it lies in the fact that she was advised probate of the will in this State was unnecessary; if the fact be conceded, it is significant only that she did not intend to claim, or exercise in this State, the right to letters testamentary. Aggregating the facts, we are forced to the conclusion,

that she never intended taking probate of the will, or letters testamentary, in this State, subjecting herself and the estate and its administration to the proper tribunals of this State, until she was quickened by the grant of administration to the appellee; and that her conduct was a renunciation of the right to letters testamentary conferred by the laws of this State; a renunciation she was without capacity to retract. If this be not true, the statutes so carefully framed, and explicitly manifesting the policy of the State, to avoid *vacuums* in the administrations of estates, of prolonged, indefinite continuance, dependent on the diligence, or the caprice of those who may have a privity of right, are vain.

The court of probate having before it, and in its custody, a duly authenticated copy of the will of the testator, very properly admitted the same to probate. The granting of the probate, according to the statute, and the principles of the common law, required a revocation of the grant of administration, as in cases of intestacy, to the appellee. Under the particular facts, the appointment of the appellee as general administrator, with the will annexed, we deem to have been properly made. We find no error in the decree of the court of probate, and it must be affirmed.

Affirmed.